**Carrie Deneise SWANSON, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. CV–15–00549–TUC–JGZ**

United States District Court, D. Arizona.

Signed 03/31/2017

Michelle S. Michelson, Law Office of Michelle S. Michelson PLLC, Tucson, AZ, for Plaintiff.

Lisa Goldoftas, Social Security Administration, Seattle, WA, for Defendant.

## ORDER

Honorable Jennifer G. Zipps, United States District Judge

Pending before the Court is a Report and Recommendation issued by United States Magistrate Judge Eric J. Markovich. (Doc. 21.) Judge Markovich recommends the Court remand this matter to the Social Security Administration (SSA) for payment of benefits. Defendant filed an objection to the Report and Recommendation, to which Plaintiff replied. (Docs. 22, 23.) After reviewing the Report and Recommendation and considering the arguments raised in Defendant's objection, the Court will overrule the objection and adopt Judge Markovich's Report and Recommendation.

## STANDARD OF REVIEW

If a party files objections to a magistrate judge's report and recommendation, a "judge of the court shall make a de

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). If no objection or only partial objection is made, the district court judge reviews those unobjected-to portions for clear error. *Johnson*, 170 F.3d at 739; *Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

## DISCUSSION [1]

### 1. Nurse Practitioner Kading is an acceptable medical source.

■ Because the record shows that Dr. Tanya Underwood supervised Nurse Practitioner (N.P.) Valerie Kading at CODAC, where Plaintiff was treated, and co-signed N.P. Kading's medical opinions, N.P. Kading qualifies as an "acceptable medical source." Under current SSA regulations, evidence of an impairment must come from an "acceptable medical source," which includes licensed physicians (M.D. or D.O.) and licensed or certified psychologists. 20 C.F.R. § 416.913(a); *see also* 20 C.F.R. § 404.1527. The agency also accepts evidence from "other sources" to show the severity of the applicant's impairment and how it affects the ability to work. 20

C.F.R. § 416.913(d). Nurse practitioners are considered "other sources." *Id.*

■ A nurse practitioner working closely with and under the supervision of an acceptable medical source qualifies as an acceptable medical source. *See Molina v. Astrue*, 674 F.3d 1104, 1112 n.3 (9th Cir. 2012) (physician's assistant did not qualify as a medically acceptable treating source because the record did not show she worked under a physician's supervision and she otherwise "acted alone");*Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (nurse practitioner's opinion considered that of an acceptable medical source where she worked closely with and under the supervision of physician); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not).[2]

Here, the record reflects that (1) Dr. Underwood, a D.O. and a board certified psychiatrist, is an acceptable medical source under 20 C.F.R. § 416.913(a); (2) Dr. Underwood is N.P. Kading's supervising psychiatrist at CODAC; (3) Dr. Underwood co-signed two letters from CODAC, including the medical source statement rejected by the ALJ; and (4) although Dr. Underwood did not initially sign the June 20, 2013 Mental Impairment Questionnaire that was completed by N.P. Kading, when this questionnaire

---

1. The facts set forth in the Magistrate Judge's opinion are undisputed by the parties.

2. The court's holding in *Gomez* was based in part upon a section of SSA regulations which permitted medical evidence to be submitted by an "interdisciplinary team," so long as that team included an acceptable medical source. The regulatory section relied upon by the *Gomez* court has since been repealed, and *Gomez's* continuing vitality has not been directly addressed by the Ninth Circuit. *See Molina,*

674 F.3d at 1112 n.3 (declining to address the question of *Gomez's* continuing vitality because the physician's assistant in that case "acted alone"); *see also Boyd v. Colvin*, 524 Fed.Appx. 334, 336 (9th Cir. 2013) (unreported) (noting Gomez superseded by regulation). Nevertheless, the Ninth Circuit has continued to cite *Gomez* for the proposition that a nurse practitioner working closely under the supervision of an acceptable medical qualifies as an acceptable medical source.

was resubmitted to the agency with CO-DAC's second letter, Dr. Underwood co-signed and dated it at that time. (*See* AR 701–18.) This evidence suggests some degree of continuity as to the supervisory relationship between N.P. Kading and Dr. Underwood and the involvement of Dr. Underwood in Swanson's care.[3] *Cf. Knapp v. Colvin*, No. 1:14-CV-3189-FVS, 2015 WL 6511614, at *12 (E.D. Wash. Oct. 28, 2015) (finding mental health therapist did not qualify as an acceptable medical source where treatment team leader was not an acceptable medical source, the record contained no evidence that therapist was supervised by doctor, and doctor's signature did not appear on the team's medical opinion or otherwise in the record). It further suggests that the opinions of N.P. Kading were adopted by Dr. Underwood, such that N.P. Kading was, in effect, working as Dr. Underwood's agent. Accordingly, the Court agrees with the Magistrate Judge that the ALJ erred in failing to consider N.P. Kading's opinion as that of an acceptable medical source.[4]

2. **The ALJ erred in failing to give specific and legitimate reasons for discrediting the opinions of Plaintiff's treating and examining providers.**

■ The ALJ erred in assigning the greatest weight to the opinion of the non-examining physician, Dr. Kieth McKee, while rejecting the opinions of the treating

provider, Valerie Kading, N.P., and the examining consultant, Dr. Noelle Rohen, without giving specific and legitimate reasons for doing so.

■ "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotations omitted) (alterations in original). "Courts afford the medical opinions of treating physicians superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns." *Potter v. Colvin*, No. 3-14-CV-02562-JSC, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015).

■ "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evi-

---

3. The fact that Plaintiff was never seen by Dr. Underwood (AR 44) is not determinative of whether N.P. Kading was working under the supervision of Dr. Underwood. *See Gomez*, 74 F.3d at 971.

4. Even as an "other source," N.P. Kading's opinion would be entitled to greater weight than that assigned by the ALJ. First, even an "other source" is qualified under agency regulations to "provide evidence about the severity of a claimant's impairments and how it affects the claimant's ability to work." *Garri-*

son v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014). Moreover, before assigning weight to N.P. Kading's opinion, the ALJ was required to consider the factors listed under 20 C.F.R. § 404.1527(c).The ALJ did not do so. Applying these factors, the record shows that N.P. Kading is a board certified Adult Psychiatric Nurse Practitioner, who has had a continuous treatment relationship with Plaintiff since 2013, and that her opinions are supported by extensive treatment notes and are consistent with other record evidence.

dence."[5] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *accord Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Rather, in reviewing the ALJ's decision to reject the opinion of a treating or examining source, a court may look to other evidence contained within the record, such as medical reports, contrary opinions by examining sources, and the claimant's own testimony.[6] *Lester*, 81 F.3d at 831 (discussing cases). The ALJ's decision to reject a treating or examining physician's opinion will be upheld where that decision is supported by an "abundance of evidence" in the record. *Id.*

Here, the ALJ's decision to reject the opinion of the treating providers N.P. Kading and Dr. Underwood, in favor of the opinion of a nonexamining physician, Dr. McKee, is not supported by substantial evidence. The ALJ assigned "little to no weight" to the medical source statement submitted by the treating providers, finding that the opinion was "too restrictive and not supported by the objective medical evidence or the claimant's reported daily activities." (AR 29.) In support of this conclusion, the ALJ identified two purported inconsistencies. First, the ALJ found that the Plaintiff's GAF score of 55, "indicative of moderate but not serious symptoms," was inconsistent with N.P. Kading's finding that Plaintiff has "marked functional limitations" that would seriously interfere with her ability to function independently, appropriately, and effectively on a sustained basis. Although the ALJ identified this as a "gross discrepancy," this Court agrees with Magistrate Judge Markovich's conclusion that this is, in fact, no discrepancy at all. As the Ninth Circuit has explained, the GAF scale is a "rough estimate of an individual's psychological, social, and occupational functioning," which "standing alone [does] not control determinations of whether a person's mental impairments rise to the level of a disability." *Garrison v. Colvin*, 759 F.3d

---

5. Dr. McKee's opinion contradicts that of the treating and examining providers. Dr. McKee found that Plaintiff had "some limitations" in social interaction, but would nevertheless be able to perform work where interpersonal interaction is limited, such as assembly work and unskilled work. (AR 98.) Dr. McKee found Plaintiff's limitations to be, at worst, "moderate." (*See* AR 97.) In contrast, Dr. Rohen found Plaintiff's problems with modulation of mood and emotional response in the face of everyday stressors to be seriously impairing and that her "psychiatric conditions were expected to be chronic with poor prognosis, and to impact her ability to work[.]" (AR 403.) Dr. Rohen further found that Plaintiff's social interaction skills were "severely impaired" and that Plaintiff's best chance for success would be where a suitable environment is paired with Plaintiff, rather than requiring the adaptation of the Plaintiff to her environment. (AR 404.) N.P. Kading similarly found that Plaintiff was "seriously limited" in many of the areas of mental aptitude and ability that are necessary to do unskilled work. (*See* AR 703.)

6. The Court rejects Defendant's argument that in evaluating the opinions of the medical sources the Magistrate Judge engaged in an improper reweighing of the evidence. Although the Court's review of the ALJ's decision is deferential, it is within the province of this Court to review the record for evidence that supports or contradicts the Commissioner's opinions. Moreover, contrary to Defendant's argument, the record as a whole does not reasonably support affirming the ALJ's decision to deny benefits. *See Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) ("[I]f the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm.").

995, 1003 n.4 (9th Cir. 2014) (internal citations omitted). Thus, the Court finds that the ALJ assigned too much weight to this single, isolated metric. Moreover, although Plaintiff's GAF score was a "55" at the time the medical source statement was completed by N.P. Kading in 2013, the record shows that Plaintiff's score fluctuated over time—at one point reaching as low as 41, which would indicate "serious symptoms" and "serious impairment in social, occupational, or school functioning." *Id.* In light of the well-established treating relationship between Plaintiff and N.P. Kading and the general up-and-down nature of Plaintiff's symptoms, the Court finds that the ALJ erred in rejecting N.P. Kading's opinion on this ground.

Second, the ALJ found that N.P. Kading had failed to explain Plaintiff's "damaging admission" that she once viewed marijuana as a solution and not a problem. (AR 29.) Plaintiff's past marijuana usage has no bearing on the disability determination at hand. As Magistrate Judge Markovich noted, in spite of some inconsistency in the testimony of Plaintiff regarding the last date of her marijuana usage, Plaintiff consistently testified that she stopped using drugs when she had her children, which predates her application for disability benefits. In fact, the record is replete with evidence that drug usage is not a contributing factor to Plaintiff's medical and psychiatric conditions.[7] *See Rubalcava v. Colvin,* No. EDCV 12-1805-DTB, 2013 WL 4013404, at *3 (C.D. Cal. Aug. 5, 2013) ("[T]he ALJ cannot simply manufacture reasons without any basis in the record to attack a [p]laintiff's credibility.... There has to be some basis in the facts of the

particular case to support the ALJ's reasoning....").

 The decision to afford only "some weight, but not controlling weight" to Dr. Rohen's opinion likewise was not supported by substantial evidence. In fact, the ALJ did not identify any reason to discredit the opinion of Dr. Rohen, an examining physician, in favor of that of Dr. McKee, a nonexamining physician. On the contrary, the ALJ found that Dr. Rohen's opinion was "generally supported by objective medical evidence." (AR 28.) The failure to provide a specific and legitimate reason for rejecting the opinion of an examining physician, beyond the contradictory opinion of a nonexamining physician, is error. *Lester,* 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.").

 In sum, in finding that Plaintiff can work as a dishwasher or janitor, the ALJ erred in rejecting the opinions of N.P. Kading and Dr. Rohen, who opined that Plaintiff has serious limitations in adaptability, emotional control, and social interactions; that Plaintiff would be absent from work more than four days a month, and that she would have difficulty maintaining consistent pace with only the customary breaks every two hours and at lunch; and that her symptoms are chronic with poor prognosis. These opinions, if properly considered, would have required the ALJ to find, based upon the responses to the hypothetical posed to the VE, that Plaintiff is disabled.

---

**7.** Although the precise dates differ, Plaintiff testified at her hearing before the ALJ consistent with her report to Dr. Rohen that she does not use illicit drugs and that she stopped using marijuana when she had her children. (*See* AR 48–49, 402.) Drs. Kogut and Snelling expressly found that there was no evidence of substance abuse disorder or drug or alcohol addiction or abuse (DAA). (AR 87, 100.) N.P. Kading specifically opined that alcohol or substance abuse does not contribute to Plaintiff's symptoms. (AR 707.)

### 3. The Magistrate Judge applied the correct standard of review to the ALJ's credibility findings.

Defendant contends that the Magistrate Judge erroneously reweighed the evidence in its review of the ALJ's credibility findings with regards to the testimony of Plaintiff and her husband, Austen Swanson. Having reviewed the Magistrate Judge's conclusions as well as the applicable law, the Court concludes that the Magistrate Judge applied the proper standard of review to the ALJ's findings.

### A. Plaintiff's pain and symptom testimony

 "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (internal quotations omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The district court reviews the ALJ's stated reasons for substantial evidence. *See Molina*, 674 F.3d at 1113.

 Having reviewed the Report and Recommendation, as well as the record in this case, the Court determines that the Magistrate Judge correctly concluded that the reasons provided by the ALJ were not supported by substantial evidence. The Court rejects Defendant's contention that the Magistrate Judge improperly reweighed the evidence and improperly substituted his judgment for that of the ALJ.[8]

### B. Lay witness testimony of Austen Swanson

 "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ may not disregard lay witness testimony without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's sole reason for discrediting the testimony of Plaintiff's husband, Austen Swanson, is an "inconsistency" between the testimony of Mr. Swanson and Plaintiff regarding the amount of time that Plaintiff spends in bed. The Court agrees with the Magistrate Judge that this reason fails to qualify as "germane," in light of the fact that the purported inconsistency is, upon closer review, non-existent. Because the ALJ failed to articulate a germane reason for rejecting the testimony of Mr. Swanson, the ALJ erred in failing to credit that testimony.

### 4. The Court will remand for an award of benefits.

 Under 42 U.S.C. § 405(g), the district court may affirm, modify, reverse, or remand a social security case. Having

---

8. The Court also rejects Defendant's suggestion that Plaintiff waived any challenge to the ALJ's credibility findings. Plaintiff's opening brief addresses the ALJ's credibility finding sufficiently for this Court to conduct its re-view. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("we review only issues which are argued specifically and distinctly in a party's opening brief.") (internal quotations omitted).

found error in the ALJ's decision, "[t]he decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The Court finds that in light of the ALJ's errors, remand for an award of benefits is appropriate.

Under the Ninth Circuit's "credit-as-true" rule, remand for an award of benefits is appropriate where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence." *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002). Even where these conditions are met, the court may, in some circumstance, nevertheless exercise "flexibility" in applying the credit-as-true rule and remand for further proceedings where remand would permit the ALJ to make specific credibility findings or otherwise resolve inconsistencies in the record. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (discussing cases). However, the Ninth Circuit has made clear that remand simply to permit the ALJ to decide the same issue again is inappropriate. *Garrison*, 759 F.3d at 1021–22 (citing cases).

The Court agrees with the Magistrate Judge's careful application of the credit-as-true rule in this case and finds that remand for an award of benefits is appropri-ate. All three conditions of the rule are met. First, the ALJ considered the claimant's evidence but failed to provide legally sufficient reasons for rejecting that evidence, as discussed herein. Second, the record in this case is extensive and complete, including three medical opinions, detailed records and notes, and the testimony of both Plaintiff and her husband as to Plaintiff's symptoms. As discussed above, the ALJ failed to identify any legitimate inconsistency or omission in this evidence, and Defendant has similarly failed to do so in the objections presently before this Court. Third, the Court finds that were the opinions and testimony properly credited in this case, the ALJ would be required to find, based on the VE's hypothetical, that Plaintiff is disabled.[9] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

### CONCLUSION

The Court finding no other error in the Magistrate Judge's careful consideration of the Plaintiff's claim, IT IS ORDERED as follows:

1. The Report and Recommendation of Magistrate Judge Markovich (doc. 21) is APPROVED AND ADOPTED;

2. Defendant's Objection to the Report and Recommendation (doc. 22) is OVERRULED;

3. The ALJ's denial of benefits is VACATED and the matter is remanded to the agency for an award of benefits;

---

**9.** The Court rejects Defendant's argument that the Court should nevertheless remand for further proceedings to develop the record and to permit the ALJ to reassess Plaintiff's RFC. Although it is customary to remand to an agency where additional investigation or explanation is necessary, remand solely to per- mit the ALJ to decide the same issue again is precisely the unfair type of "heads we win; tails, let's play again" system of disability benefits adjudication that the credit-as-true rule seeks to avoid. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *accord Garrison*, 759 F.3d at 1021–22.

4. The Clerk of the Court shall enter judgment accordingly and terminate this action.